Josie JAIMES, et al., Plaintiffs,

v.

TOLEDO METROPOLITAN HOUSING
AUTHORITY, et al., Defendants.

No. C74–68.

United States District Court,
N.D. Ohio, W.D.

June 6, 1989.

844

Jeanne Deimling Johns, A.B.L.E., Toledo, Ohio, for plaintiffs.

William Connelly and Kevin Joyce, Connelly, Soutar & Jackson, Toledo, Ohio, Andrea Newmark, Dept. of Justice, Civil Div., Anthony J. Ciccone, Jr., Trial Dept., Dept. of HUD, Washington, D.C., Charles Matuszynski, LMHA, and Patrick J. Foley, Asst. U.S. Atty., Toledo, Ohio, for defendants.

## OPINION AND ORDER

McQUADE, District Judge.

This matter is before the court on plaintiffs' motion for an interim award of attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, and the Fair Housing Act, 42 U.S.C. § 3612(p), in the amount of $303,630.00. The plaintiffs also request all costs and attorneys' fees associated with the preparation of this motion, in an amount to be determined after a decision has been made.

This class action was filed in February, 1974, in the name of all low-income minority persons residing in the Toledo metropolitan area who are unable to secure adequate housing in the Toledo metropolitan area without assistance from the Toledo [now Lucas] Metropolitan Housing Authority ["LMHA"]. The plaintiffs alleged that LMHA and the United States Department of Housing and Urban Development ["HUD"] had violated the fifth, thirteenth and fourteenth amendments of the United States Constitution; 42 U.S.C. §§ 1981, 1982 and 1983; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.; and the Housing Act of 1937, 42 U.S.C. § 1437 et seq. The case was tried in January, 1978, and District Judge Don J. Young issued an Opinion in May, 1983. Judge Young found that both LMHA and HUD were liable for intentional discrimination and segregation in LMHA's public housing programs. Judge Young awarded monetary damages and equitable relief, and ordered the preparation of an affirmative action Plan to correct past segregation.

The Sixth Circuit affirmed the district court's finding that there had been impermissible internal segregation within LMHA's housing projects. *Jaimes v. Toledo Metropolitan Housing Authority*, 758 F.2d 1086 (6th Cir.1985) (*Jaimes I*). The court, however, found that the plaintiffs lacked standing on their second claim that the defendants had prevented their obtaining fair housing opportunities in the suburbs of Toledo. Therefore, the Sixth Circuit reversed and set aside that part of the

order instructing the defendants to secure cooperation agreements with municipalities outside the city of Toledo in order to insure that public housing projects would be constructed in those municipalities. The court also set aside awards of damages.

The Sixth Circuit heard a second appeal in which the court reviewed Judge Young's affirmative action. *Jaimes v. Lucas Metropolitan Housing Authority*, 833 F.2d 1203 (6th Cir.1987) (*Jaimes II*). The court affirmed in part and reversed in part, and ordered the defendants to comply with the provisions of the affirmative action that were upheld. The Sixth Circuit also directed that the district court decide the issue of whether HUD should be held liable.

This court issued an Opinion and Order dated June 6, 1989, finding that HUD was liable for the discrimination in public housing in Lucas County, and ordered HUD to comply with the terms of the affirmative action.

An award of attorneys' fees is authorized by the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988: "In any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, ... of this Title, ..., or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

■ The court must first determine whether the plaintiffs are entitled to an award of attorneys' fees. Although an award of fees under § 1988 is a matter of the court's discretion, *see* 42 U.S.C. § 1988, a court should ordinarily award fees under the statute to a prevailing plaintiff " ' "unless special circumstances would render such an award unjust." ' " *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5912 (quoting *Newman v. Piggie Park Enters. Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968))).

The first inquiry for this court is whether the plaintiffs are a "prevailing party." The term is not defined in the statute, but the Supreme Court has stated that plaintiffs are a prevailing party for purposes of attorney's fees " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

"Prevailing party" status does not depend on the plaintiffs' success on every issue litigated. A plaintiff who succeeds on only some claims for relief may still be entitled to attorneys' fees. *Id.* 461 U.S. at 434, 103 S.Ct. at 1939. The Supreme Court declined to articulate a precise method for calculating a reasonable fee when a plaintiff achieves partial success. *See id.* at 435–37, 103 S.Ct. at 1940–41. Instead, the Court left such calculations to the discretion of the district court, counseling that a party who obtains excellent results should not receive a reduced fee simply because he failed to prevail on every issue, and a party who achieves limited success should not be awarded fees for every hour expended on the case. *Id.* "The result is what matters." *Id.* at 435, 103 S.Ct. at 1940 (footnote omitted). In affirming the *Hensley* standard, the Court recently stated:

> The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*.

*Texas State Teachers Ass'n v. Garland Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).

The plaintiffs in this case pass the statutory threshold in that they succeeded on a significant issue in the case and effected a material alteration of the legal relationship of the parties. The plaintiffs' suit has vindicated their rights to fair housing opportunities by enjoining LMHA and HUD from engaging in discriminatory practices that perpetuate segregation in public housing in

Lucas County. By seeking the enforcement of the federal housing laws, the plaintiffs have served as private attorneys general, a role that Congress intended to promote by enacting § 1988. *See id.* 109 S.Ct. at 1494. The plaintiffs are thus "prevailing parties" within the meaning of § 1988, *Hensley,* and *Texas State Teachers Association.*

The next inquiry is to determine what is a "reasonable" fee. The starting point for determining a reasonable attorney's fee is to multiply the number of hours reasonably expended by a reasonable hourly rate.

*Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891 (1984); *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The court will evaluate the plaintiffs' claim for attorneys' fees under the standards enunciated in *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). Eight attorneys have submitted affidavits of the hours they worked on this case. The following table sets forth the number of hours expended by each attorney and a suggested hourly rate.

| ATTORNEY | YEAR GRADUATED FROM LAW SCHOOL | HOURS EXPENDED | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| Galbreath | 1974 | 1,118.05 | $120 | $134,166.00 |
| Gmeiner | 1976 | 319.75 | $120 | 38,370.00 |
| Johns | 1981 | 352.50 | $100 | 35,250.00 |
| Tafelski | 1971 | 519.05 | $120 | 62,286.00 |
| Wartelle | 1976 | 97.25 | $120 | 11,670.00 |
| Frank | 1965 | 20.00 | $120 | 2,400.00 |
| Muska | 1977 | 30.00 | $120 | 3,600.00 |
| Petricoff | 1974 | 132.40 | $120 | 15,888.00 |
| TOTAL | | 2,589.45 | | $303,630.00 |

In determining whether the number of hours claimed is reasonable, the court is mindful that the Supreme Court has stated that the district court should exclude from the initial calculation any hours not reasonably expended on the litigation. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939 (*quoting* S.Rep. No. 1011, 94th Cong.2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin. News 5908, 5913). This court has reviewed the attorneys' affidavits and finds the number of hours claimed by each attorney to be reasonable. The attorneys are expected to exercise "billing judgment," *id.* at 437, 103 S.Ct. at 1941, and these affidavits, in general, reflect sound legal judgment as to the number of hours required for particular tasks. This is not to say, however, that the court will compensate the attorneys for every hour listed in their affidavits. There are two factors that may warrant a reduction of the number of hours. First, should the number of hours be reduced to account for the fact that the plaintiffs did not prevail on all their claims? *See Texas State Teachers Ass'n,* 109 S.Ct. at 1492; *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

Plaintiffs' claims in this case may be divided into two broad categories: (1) claims related to discrimination and segregation within the LMHA housing projects; and (2) claims related to the failure of LMHA and HUD to enter into cooperation agreements with suburban communities to construct affordable housing outside the city of Toledo. On the first claim, the plaintiffs were successful before the district court and were affirmed on appeal. As to the second claim, however, the Sixth Circuit held that the plaintiffs lacked standing, and therefore, dismissed those claims.

If this were a case where the plaintiffs pressed two unrelated claims and prevailed as to one but not the other, it would be

logical for the court to reduce the number of hours by fifty percent (50%). Several factors convince the court, however, that this is not such a case.

The Ninth Circuit has articulated a two-part analysis to determine whether the number of hours should be reduced where a plaintiff's success is not total.

First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.

*Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940). *See also Fite v. First Tennessee Prod. Credit Ass'n*, 861 F.2d 884, 894 (6th Cir.1988) (applying substantially similar analysis).

The plaintiffs' unsuccessful suburban housing claim is related to their successful internal segregation claim: the unsuccessful claim is based on the same legal theory and arises under the same statutory and constitutional provisions as the internal segregation claim, but involves different facts and remedies. This is not a case where the two claims are virtually identical (e.g., a case raising Title VII and 42 U.S.C. § 1981 claims), nor is it a case where the claims are so unrelated that they should be treated as if raised in different lawsuits.

The court also finds that the results obtained by the plaintiffs are substantial. An affirmative action plan is now in effect which will attempt to undo decades of *de jure* and *de facto* segregation in public housing in Lucas County.

The court concludes that some reduction of the award is appropriate, but that a fifty percent (50%) reduction would be excessive.

The Supreme Court stated that the court may either identify and eliminate specific hours or simply reduce the award to account for the partial success. *Texas State Teachers Ass'n*, 109 S.Ct. at 1492 (*citing Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941). The affidavits of the plaintiffs' attorneys do not reflect which hours were spent on which claims, so the court cannot identify and eliminate specific hours expended on the suburban housing claim. Considering that the two claims are related but involve distinct facts and remedies, and that the success achieved by the plaintiff is substantial but not complete, the court concludes that is is therefore appropriate to reduce the number of hours by twenty-five percent (25%) to reflect the plaintiffs' failure on the suburban housing claim. *Compare Zook v. Brown*, 865 F.2d 887, 895–96 (7th Cir. 1989) (affirming reduction of fee award by 75% where plaintiff prevailed only as to a portion of one out of three claims) *with Gilmere v. City of Atlanta*, 864 F.2d 734, 741–42 (11th Cir.1989) (affirming reduction of fee award by 25% where plaintiff prevailed as to § 1983 claim against individual police officers but not against municipality) *and Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464–66 (9th Cir.1988) (affirming reduction of fee award by 25% where plaintiff prevailed as to *Monell* claim against county but not as to claims against individual defendants).

 The second factor is whether the number of hours should be reduced to eliminate duplication of services. In *Northcross*, the court held that in complicated cases involving many lawyers, the court may deduct a percentage of the total hours to eliminate duplication of services. 611 F.2d at 637 (*citing Oliver v. Kalamazoo Bd. of Educ.*, 576 F.2d 714 (6th Cir.1978)). The court finds that, for the most part, the attorneys' affidavits do not indicate duplication of services. On the contrary, this case seems to have been leanly staffed for the most part. In preparing for trial, two attorneys logged time on this case, but given the complexity and magnitude of the case, the court does not find two lawyers to be excessive. The fact that several law-

yers handled this case does not justify a reduction for duplication of services. In a case that spans fourteen years, it is reasonable that individual attorneys may come and go. The amount of time a new attorney spent in acquainting herself with the case is *de minimis;* even an attorney on the case from the start would have to review records and refamiliarize himself after a period of years. The one instance of duplicative services causing excessive hours was the preparation of post trial briefs. Kathleen A. Gmeiner's affidavit states that she spent approximately 100.75 hours preparing the plaintiffs' post trial brief. Glenn G. Galbreath claims to have spent approximately 167 hours on the same task. For drafting reply briefs, Gmeiner claims 29 hours and Galbreath claims 100 hours. The court finds 267.75 hours for a post trial brief and 129 hours for a reply brief to be "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. Those hours should, therefore, be reduced by 50%, or 198 hours, rounded to the nearest hour.

The court, therefore, determines that the reasonable number of hours in this case is the number of hours stated in the attorneys' affidavits (2589.45 hours), first reduced by 198 hours to account for duplicative services and then reduced by twenty-five percent (25%) to account for partial success, for a total of 1793 hours (rounded to the nearest hour).

■ The next question is what hourly rate should be applied to the reasonable number of hours. In *Northcross,* the court held that an award of attorneys' fees should reflect the fair market value of the services provided. 611 F.2d at 638. The fair market value is generally calculated as the hourly rate charged customarily by attorneys in the community. *Id.* Some courts have concluded that the hourly rate charged at the time the award is made, rather than the rate charged when the services were rendered, is more appropriate in order to compensate for inflation, foregone interest and delay in payment. *Daly v. Hill,* 790 F.2d 1071, 1081 (4th Cir.1986); *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983): *Arthur S. Langenderfer, Inc. v. S.E. Johnson, Co.,* No. 76–425, slip op. at 5–6 (N.D.Ohio Jan. 11, 1988). The Sixth Circuit has cautioned that *Northcross* and the discretionary nature of fee awards do not require that awards be adjusted for inflation, but the court should consider whether such adjustment is called for in light of the facts of the case. *Louisville Black Police Officers v. City of Louisville,* 700 F.2d 268, 274–75 (6th Cir.1983). If the court determines that adjustment for inflation is appropriate, it can either apply a current hourly rate or enhance the entire award by an appropriate amount. *See id.* at 275; *Johnson v. University College of the University of Alabama,* 706 F.2d 1205, 1210–11 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). This court concludes that in this case, some adjustment for inflation is appropriate and that using the current market rate is the most reasonable method of calculating that adjustment.

LMHA suggests that even if the court awards fees based on current hourly rates, the fees should not be based on current levels of experience. For example, LMHA suggests that a person who currently has ten years of experience should not be compensated at the ten-year level for work that he performed fresh out of law school. LMHA's argument is not supported by caselaw, and it violates the animating principle of the fee statute of encouraging attorneys to take on complicated civil rights cases such as the one *sub judice. See Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937 (§ 1988 intended "to ensure 'effective access to the judicial process' for persons with civil rights grievances" (*quoting* H.Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976)).

In cases where the court has awarded fees at current rates, the court generally does not differentiate as to levels of experience. *E.g., Gautreaux v. Chicago Housing Authority,* 690 F.2d 601, 612 (7th Cir. 1982) (affirming a rate of $125.00 per hour for all services performed by an attorney over a fourteen-year period), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); *Akron Center for Reproduc-*

*tive Health v. City of Akron,* 604 F.Supp. 1275, 1288–92 (N.D.Ohio 1985) (compensating attorneys for work done over seven years at an hourly fee based on levels of experience at time of fee application). The fact that attorneys generally take these civil rights cases without an expectation of payment unless there are victorious is reason to compensate them based on current levels of experience. The court in *Northcross* approved the district court's consideration of the contingency of compensation as a factor for enhancing the routine hourly rate. 611 F.2d at 638. An attorney's hourly billing is based on the expectation of payment regardless of the outcome of the case. In contingency cases, where payment will only be had in the event of victory, an upward adjustment is appropriate to compensate the attorney for the risk of not being paid at all. *See Conklin v. Lovely,* 834 F.2d 543, 553–54 (6th Cir.1987) (approving enhancement of fee to compensate for contingency element provided that district court makes specific factual findings). *Northcross* cautions us, however, that in a long, complicated lawsuit, once liability is established, the contingency factor disappears and compensation for establishing a remedy, monitoring the decree and recovery fees should not include an upward adjustment for contingency. *Id.*

This case was filed in 1974 and went to trial in 1978. Judge Young did not issue a decision until 1983, and his decision was affirmed in part and reversed in part in 1985. An affirmative action plan was created in 1985 and affirmed with some exceptions in 1987. LMHA's liability was not settled until the first appeal to the Sixth Circuit was decided in 1985. The fee award should therefore reflect the contingent nature of the case during the first eleven years of the case. To compensate the attorneys based on their current levels of experience will best accomplish that adjustment. *See City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 2692–93, 91 L.Ed.2d 466 (1986) (approving award where district court compensated attorney at prevailing market rate even though attorney was inexperienced when litigation began).

As evidence of the current market rate for attorneys' services in Toledo, the plaintiffs submit the fee schedule of their attorneys, Advocates for Basic Legal Equality ["ABLE"] and the affidavit of Daniel J. Steinbock, an associate Professor of Law at the University of Toledo, who studied the rates of attorneys in Toledo in March, 1988. ABLE, a nonprofit corporation, employs twenty-one attorneys and has established the following schedule of fees.

| YEARS OF EXPERIENCE | HOURLY RATE |
|---|---|
| 0–2 | $ 60 |
| 3–5 | $ 80 |
| 6–10 | $100 |
| 11 and over | $120 |
| law clerks | $ 30 |

Professor Steinbock states that among medium-sized law firms in Toledo (10–19 lawyers), the average hourly rate for senior partners is $120.00. Among larger law firms (20 or more lawyers), the average hourly rate for senior partners if $124.00. For junior partners, the average hourly rate at medium-sized firms is $100.00 and at larger firms, $102.00. The plaintiffs' request for $120.00 per hour for an attorney with more than eleven years of experience and $100.00 for an attorney with six to ten years of experience is a reasonable request in light of prevailing market rates for attorneys with comparable experience in Toledo.

■ As a final matter, the court must determine whether liability for the plaintiffs' attorneys' fees should be apportioned between the two defendants, LMHA and HUD. When this motion for an interim award of attorneys' fees was filed, the issue of HUD's liability had not been resolved. The plaintiffs, therefore, sought fees only from LMHA. In view of this court's determination that HUD is liable for the plaintiffs' claims, the court concludes that it is appropriate to determine whether HUD should bear a portion of the fees award.

In *Council for Periodical Distributors Ass'ns v. Evans,* 827 F.2d 1483, 1487–88 (11th Cir.1987), the court stated that the district court has discretion whether and how to divide liability for fees. In cases where the defendants participated equally

in the wrongdoing, the court may hold the defendants jointly and severally liable for fees, or the court may divide the fees equally among the defendants. *Id.* at 1487; *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 959 (1st Cir.1984). Fees may also be divided according to the relative culpability of each defendant. *Evans,* 827 F.2d at 1488; *Grendel's Den,* 749 F.2d at 960; *Jose P. v. Ambach,* 669 F.2d 865, 871 (2d Cir. 1982). It may also be appropriate to apportion fees according to the amount of time spent by the plaintiff in preparing the case against each defendant. *Evans,* 827 F.2d at 1488; *Grendel's Den,* 749 F.2d at 960; *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118, 1125–26 (9th Cir.1981).

Several factors influence this court's decision to apportion fees. First, HUD has been a defendant in this case since 1975, and plaintiffs have expended considerable effort in proving HUD's participation and responsibility for illegal discrimination in public housing administered by LMHA and funded by HUD. Second, in view of the fact that LMHA was responsible for on-the-scene administration of public housing, LMHA assigned tenants to particular units, and LMHA maintained the waiting list, while HUD provided funds, authorized the three refusal policy, and exercised a general supervisory function, LMHA should bear more of the responsibility than HUD for the discrimination and segregation in public housing. *See Evans,* 827 F.2d at 1487 ("[I]t may be appropriate for a district court to apportion fees between the active instigator of a wrong and a more passive co-defendant who had a more peripheral or ministerial role in the wrong.").

If this were a case where both defendants contributed equally to the injury suffered by the plaintiffs, then the court would be inclined to apportion damages equally between the two defendants. In this case, however, although HUD has been found to be liable for the injury to the plaintiffs, the court is satisfied that LMHA bears more of the direct responsibility for the plaintiffs' injury. Because the attorneys' affidavits do not reflect which hours were spent preparing the case against which defendant, the court cannot apportion fees on an hourly basis. Therefore, the court finds that LMHA is liable for two-thirds of the plaintiffs' attorneys' fees and HUD is liable for one-third of the fees.

■ In holding the United States liable for fees, the court may not compensate at a current hourly rate in order to account for delay of payment. In *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Court held that an award of attorneys' fees against the United States, pursuant to Title VII of the Civil Rights Act of 1964, may not compensate attorneys at current hourly rates in order to account for delay of payment because the no-interest rule renders the United States immune from an award of interest, in the absence of express congressional waiver of that immunity. *Compare Loeffler v. Frank,* —— U.S. ——, 108 S.Ct.1965, 1974, 100 L.Ed.2d 549 (1988) (holding that interest may be awarded against Postal Service because in creating the Postal Service Congress "cast off the cloak of sovereignty and assumed the status of a private commercial enterprise" (quoting *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 2963 n. 5, 92 L.Ed.2d 250 (1986)). Because there is no express waiver of the United States' immunity with respect to interest in § 1988, the court concludes that as to the number of hours for which HUD is liable, plaintiffs' attorneys may not be compensated at the current hourly rate. The court does not have sufficient evidence to set a reasonable hourly rate for the years 1974 to 1978 and 1983 to 1987. The parties will, therefore, supply the court with such evidence according to the schedule set forth below.

The plaintiffs have claimed that their attorneys spent 2589.45 hours on their case up to September, 1988. This figure will be reduced by 198 hours to account for duplicative services and an excessive number of hours in preparing post trial briefs. The remaining number of hours, 2391, will be reduced by twenty-five (25%) to account for the plaintiffs' partial success. The reasonable number of hours, rounded to the nearest hour, is therefore 1793. LMHA is liable for 1195 hours and HUD is liable for

598 hours. The reasonable hourly rate for those hours assessed against LMHA is $120 per hour for hours worked by attorneys with more than eleven years experience (1018 hours) and $100 per hour for hours worked by attorneys with six-to-seven-years experience (177 hours). LMHA is therefore liable for $139,860.00 in fees.

It is therefore

ORDERED that plaintiff shall provide this court, within five (5) days of the receipt of this order, with evidence of the hourly rate of attorneys in Toledo during the years 1974 to 1978 and 1983 to 1987;

FURTHER ORDERED that defendant HUD shall have five (5) days from the plaintiffs' submission to respond;

FURTHER ORDERED that defendant LMHA shall pay to plaintiffs' counsel, Advocates for Basic Legal Equality, the sum of One Hundred Thirty Nine Thousand Eight Hundred Sixty Thousand Dollars ($139,860.00), plus interest, from the date of this order.