Cassandra DEAN, a minor, and Tommy Dean, next friend, Plaintiff–Appellee,

James R. Bandy and James R. Bandy, P.C., Intervening Plaintiffs–Appellants,

v.

HOLIDAY INNS, INC., an Ohio corporation, Defendant.

Nos. 87–1624, 87–1919.

United States Court of Appeals, Sixth Circuit.

Argued May 12, 1988.

Decided Nov. 1, 1988.

Robert M. Goldschmid (argued), Detroit, Mich., for intervening plaintiffs-appellants.

Ronald Holton, Troy, Mich., Stephen Scapelliti (argued), Southfield, Mich., for plaintiff-appellee.

Before WELLFORD, BOGGS and NORRIS, Circuit Judges.

WELLFORD, Circuit Judge.

This case involves a dispute between attorneys about division of a legal fee in a case involving a minor claimant and defendant Holiday Inns, named as an Ohio corporation in this proceeding. It also involves the setting of proper attorneys' fees when a parent and next friend has agreed to a contingency contract with an attorney representing the minor and next friend. The plaintiffs sought damages, costs, and attorney fees under 42 U.S.C. § 1981, *et seq.*[1]

---

1. The suit was brought in a federal district court in Detroit, residence of plaintiffs. The pleadings asserted that a federal question was involved and claimed that Cassandra Dean, a business invitee, was attacked for racial reasons at the Holiday Inn property in Fremont, Ohio. Other counts were based on defendant's alleged negligence. Plaintiffs also sought "equitable and proper" relief.

On January 6, 1982, Tommy G. Dean, one of the plaintiffs, requested James R. Bandy, P.C., a law firm, to file a lawsuit on behalf of Dean's minor daughter, Cassandra, the other plaintiff. Cassandra had been attacked and nearly drowned in a Holiday Inn swimming pool, and Dean wanted to sue the hotel for damages connected with his daughter's personal injuries. Dean and Bandy entered into a contingent fee arrangement whereby Bandy agreed to handle the case in return for one-third of any recovery plus costs. From January 6, 1982 until July 1984, the Bandy firm spent a total of only seven hours on the Dean case. No complaint was filed during this time, although the episode occurred in July of 1981. Bandy originally assigned the case to an associate who did very little on it before leaving the firm in October 1983. When the associate left the firm, Bandy did not reassign the case and did not return telephone calls from Mrs. Dean for several months.

On July 6, 1984, the Dean file was assigned to Stephen Scapelliti, another associate of the Bandy firm. Scapelliti was told by the firm's secretary that the Deans were going to go elsewhere to pursue their claim unless their phone call was returned that very day. Scapelliti called the Deans and assured them he would file a complaint before the three-year statute of limitations expired on the ensuing July 9. Scapelliti filed the complaint before the statute of limitations expired. Holiday Inn failed to respond, and Scapelliti was able to obtain a default judgment on November 21, 1984. A trial was then set to determine damages, but the district court first ordered the case to mediation in accord with a practice sanctioned by local rules. On October 1, 1985, the mediation panel recommended an award of $125,000. Holiday Inn rejected this figure, and the case was pending for trial on damages when Scapelliti left the Bandy firm on December 31, 1985.

In mid–1985, Bandy had previously informed Scapelliti that he would be discharged from the firm due to a lack of business. Bandy apparently changed his mind about discharging Scapelliti, and offered to give him 20% of the fee earned in the Dean case if Scapelliti agreed to stay. Although Scapelliti agreed to this arrangement, he was later terminated. Bandy directed Scapelliti to notify the Deans that he was leaving the Bandy firm, and to inform them that Bandy would handle the case henceforth. Scapelliti so advised Mr. Dean on December 30, 1985. The Deans responded, however, that they would not be represented by Bandy, and requested that Scapelliti continue to represent them. Scapelliti agreed to accept the representation on a contingency basis of one-third of any recovery plus costs. Upon being advised of this development, Bandy called Mrs. Dean to suggest that he and Scapelliti be retained as co-counsel. The Deans rejected this offer on December 31, 1985. From that point Scapelliti represented the Deans. Bandy, nevertheless, refused to withdraw as attorney of record. Scapelliti then informed the district court that he was counsel for the Deans and represented them in his individual capacity. Bandy undertook no action indicating to the district court that he considered himself and/or his firm to be Scapelliti's co-counsel.

Scapelliti resumed negotiations with Holiday Inn and eventually agreed to a settlement of $125,000 on March 18, 1986. Bandy then moved to intervene as a third party and asked the court to decide the issue of a division of attorneys' fees. The district court granted Bandy's motion to intervene and referred the matter to a magistrate, who found jurisdiction to hear the case despite Bandy's claim that diversity was destroyed by his intervention. The magistrate recommended that Bandy be awarded $4,725, plus court costs totalling $2,284.33, as fair compensation for the work done by him and his firm. The magistrate also recommended that Scapelliti be awarded the sum of $41,666.25 plus interest minus $7,009.33. Jurisdiction and the recommended award were upheld by the district court, and this appeal followed.

## I.  JURISDICTION

■ Bandy first claims that it was error for the court to have proceeded in the case after he was allowed to intervene, because

diversity jurisdiction no longer existed. Diversity jurisdiction, however, is determined at the outset of a lawsuit, and changes thereafter occurring ordinarily do not destroy jurisdiction. *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 549, 6 L.Ed. 154 (1824). Applying this rule to intervention under Fed.R.Civ.P. 24, courts have held that permitting intervention will not destroy jurisdiction if the intervenor is not an indispensible party. *American National Bank and Trust Co. of Chicago v. Bailey,* 750 F.2d 577, 582 (7th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985); *Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52, 54 (5th Cir.1970); *Hardy–Latham v. Wellons,* 415 F.2d 674, 676 (4th Cir.1968); *Black v. Texas Employers' Insurance Association,* 326 F.2d 603 (10th Cir.1964). By seeking to intervene to dispute allocation of attorneys' fees, Bandy has invoked Fed.R.Civ.P. 24, and his argument concerning ancillary and pendent jurisdiction is irrelevant. *Gaines,* 434 F.2d at 54. Because it is clear that there was diversity between the original parties, jurisdiction of citizenship in the district court was proper, and jurisdiction remained proper after and despite Bandy's intervention to seek resolution of the attorneys' fee dispute.

> When subject matter jurisdiction is predicated upon the diversity of the parties, citizenship of the parties is determined *at the time the action is commenced.*

*Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 450 (6th Cir.1988) (emphasis added).

II. *ALLOCATION AND SETTING OF ATTORNEY FEES*

■ An attorney who has been wrongfully discharged by his client in Michigan is entitled to *quantum meruit* recovery, based on the number of hours worked multiplied by a reasonable hourly rate.[2] *Amb-*

rose v. Detroit Edison Co., 65 Mich.App. 484, 237 N.W.2d 520 (1975); *Law Offices of Lawrence J. Stockler, P.C. v. Semaan,* 135 Mich.App. 545, 355 N.W.2d 271 (1984). *Ambrose* holds that a reasonable hourly rate should reflect the number of hours worked, the quality and character of the attorney, the difficulty of representation, and other relevant factors. *See Paolillo v. American Export Isbrandtsen Lines, Inc.,* 305 F.Supp. 250, 251 (S.D.N.Y.1969) (cited by *Ambrose,* 237 N.W.2d at 524). We usually sustain a district court's award and division of attorneys' fees absent an abuse of discretion. *Krause v. Rhodes,* 640 F.2d 214, 218 (6th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).

We find no error in the magistrate's application of Michigan law in this case. The evidence shows that Bandy discharged Scapelliti on December 31, 1985, at which time the Bandy firm had accumulated 52.50 hours in time on the Dean matter (due almost entirely to Scapelliti's time and effort). The magistrate awarded fees of $4,725 after multiplying 52.50 hours by a rate of $90 an hour as a reasonable rate. It is apparent that he recognized to some degree the contingent nature of Bandy's agreement with the Deans when he increased the hourly rate from the Bandy firm's usual hourly rate of $75, although Bandy's performance was questionable. The court also awarded Bandy costs of $2,284.33. We find approval of this fee award to Bandy to be in the best interest of the minor, Cassandra Dean, and not an abuse of discretion.

Although Bandy's firm represented the Deans until after the mediation hearing, it is apparent from the record that the ultimate settlement reached was the result of substantial work and effort on the part of Scapelliti. Bandy's equities in the ultimate fee awarded are not strong because the Bandy firm's inaction almost resulted in

---

2. If Bandy's discharge was justified, rather than wrongful, his entitlement to a recovery would be even less. *See Medbury v. General Motors Corp.,* 119 Mich.App. 351, 326 N.W.2d 139 (1982) (discussing six factors to be applied if the discharge was not wrongful). In *Medbury,* the court indicated that a reviewing court should reverse a trial court determination only if it were "left with the conviction that a mistake has been committed." *Id.* at 354, 326 N.W.2d at 140. We harbor no such conviction here.

the case being barred by the statute of limitations.

## III. *DETERMINATION OF FEE TO SCAPELLITI*

To the extent that Tommy G. Dean effected a recovery for his expenses and costs attendant to his minor daughter's injury and medical expenses, he would be bound, as an adult, to the one-third contingent fee with Scapelliti. (Whether or not he would be bound to the Bandy firm, we are satisfied that the *quantum meruit* attorney award discussed and approved in part II is sufficient to cover its services to both plaintiffs.) The attorney fee for Scapelliti is another matter.

■ The district court gave no apparent consideration to its necessary role as arbiter to decide in the case of a minor's claim what is fair and reasonable and *in the best interest of the minor*. As stated in *Centala v. Navrude*, 30 Mich.App. 30, 32–33, 186 N.W.2d 35, 36 (1971):

Fairness of the settlement must be determined by the trial court in every case … since they are unable to care for themselves, [minors] deserve the court's protection.

.     .     .     .     .

Courts are charged with the protection of rights of infants and incompetents and should always give due regard to such rights. 3 Callaghan, *Michigan Pleading and Practice*, § 32.35, p. 97.

■ The agreement to a contingent fee contract by a parent or next friend on behalf of a minor is not necessarily binding on the minor, whose interests are subject to the protection of the court. *Centala*, 30 Mich.App. 30, 186 N.W.2d 35; *Dudex v. Sterling Brick Co.*, 237 Mich. 470, 212 N.W. 92 (1927); *Palazzolo v. Verdier*, 234 Mich. 547, 208 N.W. 677 (1926); *cf. Pokriefka v. Mazur*, 379 Mich. 348, 353, 151 N.W.2d 806, 809 (1967) (indicating that an executed contract for personal services is binding on a minor if it is "under all the

circumstances, reasonable, or not so unreasonable as to be evidence of fraud or undue advantage" (quoting *Spicer v. Earl*, 41 Mich. 191, 193, 1 N.W. 923 (1879)). These cases and the general rule hold that settlement of a minor's claim or agreements or waivers affecting a minor's rights or interests are always subject to approval or amendment by the court with jurisdiction to pass on such agreements or actions. 43 C.J.S. *Infants* §§ 237, 238. Independent investigation by the court as to the fairness and reasonableness of a fee to be charged against a minor's estate or interest is required. *See Dixon v. United States*, 197 F.Supp. 798, 802 (W.D.S.C.1961).

It is an ancient precept of Anglo–American jurisprudence that infant and other incompetent parties are wards of any court called upon to measure and weigh their interests.

While the infant sues or is defended by a guardian ad litem or next friend, every step in the proceeding occurs under the aegis of the court.

*Dacanay v. Mendoza*, 573 F.2d 1075, 1079 (9th Cir.1978).

The interest of an attorney seeking to be awarded a fee from the settlement proceeds effectuated for a minor must always, by the nature of the relationship and the dependency of the minor, be in tension. When a court is called upon to approve the settlement as is in the best interest of the minor, it must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise.[3]

In the instant case, there is no indication that the district court took these considerations into account, or that the judge considered anything other than the contingent fee contract calling for a one-third fee.

In fixing the amount, courts may consider various matters, such as the character of the litigation and of the issues involved. In addition, the court may consider the amount involved, the labor or

---

**3.** Perhaps the contingent or other amount "agreed upon" may well be consiuered the *upper* *limit* of an award.

services performed, the care and diligence exhibited, and the results achieved. The court may be required to look to the methods of evaluating attorney fees generally, the customary fee for similar services when performed by an attorney, and current economic conditions, including price trends, the cost of living, and the cost of doing business.

43 C.J.S. *Infants* § 238, at 626 (footnotes omitted).

A complicating factor in this case is that in one count of the complaint, plaintiffs sought a recovery under a federal civil rights statute which authorizes imposition of an attorneys' fee against the defendant if a plaintiff is successful in his or her claim. There is no indication as to whether the settlement involved took into account whether any part of the recovery was attributable to the federal civil rights claim. Plaintiffs' counsel himself may have overlooked this complication or potentiality.

In any event, it is necessary to remand this case to the district court for an appropriate setting and determination of attorney's fees to Scapelliti, taking into consideration, of course, the principles herein discussed. The district court may choose to appoint a guardian ad litem to represent the interests of the minor, otherwise unrepresented, in a hearing to decide a fair and equitable allowance.

The decision concerning setting an attorney's fee for Scapelliti is accordingly REVERSED and the question of amount REMANDED in accordance with the principles set out in this opinion.