914 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard P. COTTRELL, Plaintiff-Appellee,
Garratt & Evans, P.C., Intervenor-Appellant,
v.
BENDIX CORPORATION and Allied Corporation, Defendants.
 Nos. 89-1867, 89-2091.
 United States Court of Appeals, Sixth Circuit.
 Sept. 28, 1990.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 On July 21, 1987, plaintiff, Richard P. Cottrell, a resident of Michigan, filed a wrongful discharge action in Michigan state court against his former employer, the Bendix Corporation ("Bendix").[1] Shortly thereafter, Allied-Signal, the successor of Bendix through merger filed a petition for removal in federal court pursuant to 28 U.S.C. Sec. 1441.
 
 
 2
 About a year later, E. Michael Morris, the attorney who had been primarily responsible for handling Cottrell's case, terminated his association with Garratt and Evans (G & E) or the predecessor by whom he had been employed. Thereafter, plaintiff hired Morris to continue his representation.[2] On August 31, 1988, the district court entered an order substituting Morris as counsel of record, but this was to be without prejudice to the firm's lien rights, if any.
 
 
 3
 On October 31, 1988, G & E filed a motion to intervene seeking a charging lien in Cottrell's still unsettled and untried case for the payment of attorneys' fees. Cottrell filed a response and brief through Morris arguing that the court should deny G & E's motion to intervene due to "unclean hands." Within thirty days, G & E filed a "notice" in the district court requesting that the court allow G & E to withdraw its motion to intervene in the case without prejudice.[3] To avoid the court's being "embroiled in disputes as between Morris and petitioner [G & E]" Cottrell then filed a motion urging the district court to decide the charging lien issue which had been raised by G & E.
 
 
 4
 In December of 1988 the district court held a status conference and afterwards entered an order holding G & E's motion for intervention and plaintiff's motion for a ruling on the attorneys' charging lien "in abeyance pending further disposition of this action." (emphasis added). This was further clarified on February 16, 1989, when the district court stated that "it was not deferring jurisdiction" but that the attorney fee controversy "was premature prior to determination as to whether there is to be recovery." G & E then filed a motion to vacate the December and February orders arguing that they violated due process because G & E was never given an opportunity to be heard prior to entry. On June 2, 1989, the parties in the underlying action agreed to dismiss the case with prejudice and without costs or attorneys' fees.
 
 
 5
 On June 15, 1989, the district court conducted a hearing on the intervention and attorneys' lien questions at which both G & E and Morris were given full opportunity to be heard. At this hearing, the court ruled that G & E was entitled to a recovery in quantum meruit for the reasonable value of the services it provided and granted G & E additional time to review the time records kept by Morris in the case throughout his handling from filing to settlement. On June 28, 1989, the court conducted another hearing on the attorneys' fee controversy after which it issued an order granting G & E's motion to intervene and awarding G & E an attorneys' fee and lien totaling $4,937.00 plus costs.
 
 
 6
 G & E appeals, and we are presented with this unfortunate squabble between conflicting attorney claims and contentions.
 
 
 7
 1. Subject Matter Jurisdiction in the District Court
 
 
 8
 Intervenor G & E argues first in their brief that the district court did not have subject matter jurisdiction over the underlying employment because of lack of diversity. Specifically, G & E argues that the inclusion of Bendix as a party in the underlying action defeated complete diversity.[4]
 
 
 9
 Diversity is determined at the time a suit is commenced. Dean v. Holiday Inns, Inc., 860 F.2d 670, 672 (6th Cir.1988) (quoting Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 450 (6th Cir.1988)); Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp., 523 F.2d 543, 548 (7th Cir.1975); 13 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3608. Under Michigan and Delaware law, the separate existence of a corporation ceases when it merges into another corporation. See 8 Del.Code Ann.tit. 8 Sec. 259; Mich.Stat.Ann. Sec. 21.200(724) (Callaghan 1990 Supp.); see also Hoefferle Truck Sales, 523 F.2d at 549; 13 Wright, Miller & Cooper, supra Sec. 3624. After a foreign corporation merges into a Delaware Corporation, the surviving corporation for diversity purposes is deemed to be a citizen of Delaware. Hoefferle Truck Sales, 523 F.2d at 549 (citing Akwell Corp. v. Eiger, 141 F.Supp. 19, 21 (S.D.N.Y.1956)).
 
 
 10
 The petition for removal here indicated that both Bendix and Allied had merged into Allied-Signal, a corporation incorporated under the laws of Delaware with its principal place of business in Morristown, New Jersey, prior to the institution of the underlying cause of action. Plaintiff's original complaint acknowledged that Bendix merged into Allied, a New York corporation, prior to the institution of the suit in state court. The corporate citizenship of the surviving corporation, Allied-Signal, is the relevant citizenship for diversity purposes as of the time the suit was filed. We hold, therefore, that the district court had subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332(c) over the underlying action into which G & E sought to intervene. G & E's proof falls far short of establishing a lack of diversity. It ill behooves G & E to attempt to contravene what that firm's predecessor set out in a complaint filed by them.
 
 
 11
 G & E argues next that the district court's decisions on the attorneys' lien issue are improper because the underlying case (Cottrell v. Bendix Corp.) had been dismissed. G & E contends that since it was not an original party to the action that its motion to intervene was properly withdrawn by it prior to the adjudications in question. We hold that the district court has ancillary jurisdiction to adjudicate fee disputes arising out of a matter over which it has proper subject matter jurisdiction.
 
 
 12
 A federal court acquires jurisdiction of a case or controversy in its entirety, and a federal court may decide collateral matters necessary to render complete justice. See Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir.1982); 13 Wright, Miller & Cooper, Federal Practice & Procedure Sec. 3523. A federal court may determine the legal fees with respect to the work performed for a case properly before the court, even if the underlying action is dismissed. See Garrick v. Weaver, 888 F.2d 687, 690 (10th Cir.1989); United States v. Ford, 650 F.2d 1141, 1143-44 (9th Cir.1981), cert. denied, 455 U.S. 942 (1982); see also Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir.1988); Novinger v. E.I. DuPont de Nemours & Co., 809 F.2d 212, 217-18 (3d Cir.), cert. denied, 481 U.S. 1069 (1987); Jenkins, 670 F.2d at 918-19.
 
 
 13
 We also find G & E's argument that it was denied due process when the district court issued an order and a clarification deferring consideration of the intervention and attorneys' fees issues until the conclusion of the underlying case to be without merit. After the parties to the original action agreed to a dismissal, the district court promptly took action to settle the intervention and fee dispute, which had been held in abeyance. Both G & E and Morris were given adequate notice and a sufficient opportunity to present their respective positions before a decision was rendered with respect to this fee dispute. The decision in federal court would avoid multiplicity of proceedings on this question in two different jurisdictions.
 
 2. Amount of Legal Fee
 
 14
 G & E argues that the district court abused its discretion when it failed to consider and take into account the existence of a purported contingent fee agreement between the firm (or its predecessor) and Cottrell. A review of relevant Michigan law and case law in this court indicates no error in limiting G & E's award to a quantum meruit recovery.
 
 
 15
 We sustain a district court's award and division of attorneys' fees absent an abuse of discretion. Dean v. Holiday Inns, Inc., 860 F.2d 670, 672 (6th Cir.1988). Under Michigan law, a reviewing court should reverse a trial court's determination of attorneys' fees only if it is "left with the conviction that a mistake has been committed." Id. at 672 n. 2 (quoting Medbury v. General Motors Corp., 119 Mich.App. 351, 326 N.W.2d 139 (1982)). In Michigan, an attorney retained on a contingent fee arrangement who is discharged without cause is entitled to quantum meruit recovery, based on the number of hours worked multiplied by a reasonable hourly rate. Id. at 672 (citing Ambrose v. Detroit Edison Co., 65 Mich.App. 484, 237 N.W.2d 520 (1975)); see also Ecclestone, Moffett & Humphrey P.C. v. Ogne, Jinks, Alberts & Stuart, P.C., 177 Mich.App. 74, 441 N.W.2d 7, 8 (1989) (affirming an award of $100 per hour as reasonable even though plaintiff's actual slated fee was $150 per hour). A reasonable hourly rate should reflect the number of hours worked, the quality and character of the attorney, the difficulty of representation and other relevant factors. Dean, 860 F.2d at 672; see also Medbury, 326 N.W.2d at 140 (discussing application of factors enumerated in Crawley v. Schick, 48 Mich.App. 728, 737, 211 N.W.2d 217 (1973)).
 
 
 16
 G & E argues that Hartman v. Associated Truck Lines, 178 Mich.App. 426, 444 N.W.2d 159 (1989), requires that the existence of a contingent fee agreement[5] be taken into account in awarding attorneys' fees. Hartman, however, is easily distinguishable from the case at hand, because it did not involve the valuation of services provided by a discharged attorney. 444 N.W.2d at 160. Instead, Hartman decided whether or not the trial court abused its discretion in awarding less than $6,000 in fees for the services of a single attorney where the plaintiff's award totalled approximately $60,000. Hartman neither discusses nor attempts to alter or overrule the principles set forth in Ambrose and Medbury that limit a discharged attorney to a recovery in quantum meruit. Finally, Hartman reiterates the established principle that a trial court need not detail its findings as to each and every factor considered in determining a reasonable fee.
 
 
 17
 A review of the record in this case indicates that the district court did not abuse its discretion in awarding an attorneys' lien in favor of G & E in the amount of $4,937.00 plus costs. We reach this decision, whether or not there was a contingent fee agreement, primarily because no recovery had been made at the time G & E sought to intervene and claim a lien.
 
 
 18
 G & E made no mention of the fact in its initial claim that it had billed Cottrell on an hourly basis and had been paid over $3,500 by July of 1988 based upon an "hourly rate per fee agreement." It had also billed for and received more than $1,000 in costs. This procedure would seem inconsistent with what we would perceive as a pure contingency arrangement. At oral argument, G & E's counsel seemed unclear whether the firm should be paid the full contingency based on the settlement amount in addition to the fees and costs already billed and paid by Cottrell.
 
 
 19
 G & E's counsel, then, was not clear whether claimant firm was seeking the full contingency share plus the hourly billings it had already received. Clearly G & E could not legitimately claim both; this type of attitude concerning a lien pursuant to a questioned contingency fee, in our view, bespeaks understandable problems Cottrell and his attorney, Morris, experienced in dealing with G & E in this case.
 
 3. Rule 11 Sanctions
 
 20
 Morris contends that Rule 11 sanctions should be imposed on G & E for maintaining a frivolous appeal and making affirmative misstatements of law in its appellate briefs. Morris points out that G & E, and in particular C. William Garrett, is "no stranger' to sanctions under Rule 11. See INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391 (6th Cir.1987). Although some of G & E's arguments may border on frivolity, the only evidence of Rule 11 proportion would appear to be G & E's failure to inform the court that the Ohio Supreme Court in Fox & Assoc. Co. v. Purdon, 44 Ohio St.3d 69, 541 N.E.2d 448, 450 (1989), adopted the quantum meruit theory of compensation for attorneys discharged by their clients. The matter of Rule 11 sanctions, when we are in doubt about its applicability, is generally a matter left to the discretion of the trial court. Rule 11 sanctions do not apply with respect to appellate proceedings. Cooter & Gell v. Hartmarx Corp., 110 S.Ct. 2447, 2461-63 (1990).
 
 
 21
 Accordingly, we AFFIRM the district court in all respects, but we assess costs to G & E under the circumstances.
 
 
 
 [1]
 In 1985, Bendix merged into Allied Corporation ("Allied"), a New York corporation. Allied subsequently merged with Signal Corporation to become Allied-Signal, Inc. ("Allied-Signal"), a corporation incorporated under the laws of Delaware with its principal place of business in Morristown, New Jersey. The citizenship of Allied-Signal would seem to meet diversity requirements
 
 
 [2]
 From the outset, Cottrell stated that he intended that Morris would be his counsel and would perform the "vast majority" of the work
 
 
 [3]
 On the same day, however, G & E filed a separate action in the same original state court directly against Cottrell seeking the contested attorneys' fees
 
 
 [4]
 G & E bases their contentions on information gathered from a series of telephone calls placed between December 28, 1989 and January 2, 1990, which allegedly indicated that Bendix is a wholly-owned subsidiary of Allied
 
 
 [5]
 There was a serious dispute in this case about the existence of a contingent fee agreement. No written documentation was produced. G & E claimed that Morris had taken its files