933 F.2d 1009
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Teresa SHELLEY, Administratrix of the Estate of Bobby
Shelley, Deceased, Rebecca Ann Dyer and Teresa Shelley,
Joint Administratrixes of the Estate of Mary Buchanan,
Deceased, Teresa Shelley, Administratrix of the Estate of
LaNell Shelley, Deceased, Plaintiffs-Appellants
Ralph D. Gibson, Attorney-Appellant
v.
TEXAS EASTERN TRANSMISSION, INC., Defendant-Appellee
Lester H. Burns, Jr., Mary C. Noble, Attorneys-Appellees.
 No. 89-6513.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1991.
 
 1
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and MILES, Senior District Judge[1].
 
 
 2
 WENDELL A. MILES, District Judge.
 
 
 3
 This dispute over the division of attorneys' fees arises out of a tragic set of wrongful death diversity actions filed by the estates of four persons who were killed in a natural gas pipeline explosion in April, 1985. The wrongful death actions have been settled on the merits with the principal defendant and owner of the pipeline, Texas Eastern Transmission, Inc. On August 10, 1989, the district court issued an order establishing the percentage division of the contingent fees in three of the cases which, at that time, were yet to be settled. Plaintiffs' attorney Ralph Gibson appeals this order dividing the fees.
 
 
 4
 In April, 1985, Bobby Shelley, his wife Elsie Shelley, their son Anthony Shelley, Bobby's mother LaNell Shelley, and family friend Mary Buchanan were killed in a natural gas pipeline explosion at the Shelley home in Metcalf County, Kentucky. Teresa Shelley was named as the sole administratrix of the estates of Bobby and LaNell Shelley, and as co-administratrix of the paternal half of the estate of Anthony Shelley.[2] Teresa Shelley was also named as co-administratrix of the Mary Buchanan estate, together with Rebecca Dyer.
 
 
 5
 Attorney-appellee Lester H. Burns, Jr. was initially retained on a contingency basis by Teresa Shelley and Rebecca Dyer to initiate wrongful death actions on behalf of the Bobby Shelley, LaNell Shelley, Anthony Shelley, and Mary Buchanan estates. Burns filed the complaints in the Western District of Kentucky in December, 1985. Shortly thereafter Burns was indicted on federal criminal charges. He eventually pled guilty to the charges and resigned from the Kentucky bar approximately one year after the cases had been filed.
 
 
 6
 Upon Burns' withdrawal from the cases, attorney-appellant Ralph Gibson, who had previously been employed as an associate with Burns' law office, was retained by the plaintiffs and continued to work on the cases. In addition, attorney-appellee Mary Noble, who had been introduced to Teresa Shelley by Burns, was also retained by Teresa Shelley to work as co-counsel with Gibson in the three Shelley cases. Noble was not hired to work with Gibson on the Buchanan case, apparently because co-administratrix Rebecca Dyer refused Noble's services.
 
 
 7
 Prior to Burns' withdrawal, on November 10, 1986, Teresa Shelley and Rebecca Dyer signed a contingency fee contract agreeing to pay Gibson 33 percent of any settlement or verdict award in the Buchanan case. On December 4, 1986, Gibson and Burns then signed an agreement granting Burns 60 percent of any attorney fee award in the Buchanan case, ostensibly based upon Burns' efforts in that case up to that time. At Rebecca Dyer's insistence, Gibson eventually procured the services of another attorney, Stephen Meyer, to assist him on the Buchanan case.
 
 
 8
 On November 12, 1986, Teresa Shelley signed a second contingency fee contract agreeing to pay 35 percent of any settlement or verdict award in the Shelley cases to Burns, Gibson, and Noble. The 35 percent fee was to be divided 65 percent to Burns, 30 percent to Noble, and 5 percent to Gibson. Burns and Noble signed the contract; Gibson did not. Sometime later in December, 1986, at Teresa Shelley's insistence, Gibson, Burns, and Noble renegotiated the division of the fees in the Shelley actions in order to allow Gibson a greater percentage of the fees. The result was an agreement that 60 percent of the Shelley fees would go to Burns, 25 percent to Noble, and 15 percent to Gibson. However, little more than one year later, in January, 1988, Teresa Shelley became unhappy with Noble's services and discharged her, leaving Gibson as the only remaining attorney on the Shelley cases.
 
 
 9
 In April, 1988, a tentative settlement was reached between the parties in the Anthony Shelley case. Burns and Noble both filed motions seeking recovery of their anticipated attorneys' fees in that case. In May, 1988, after holding a brief hearing at which no sworn testimony was taken, the district court ordered that the attorneys' fees in the Anthony Shelley case would be distributed 60 percent to Burns, 22 percent to Noble, and 18 percent to Gibson.[3] The court based this order on the December, 1986 contract, awarding Burns his full agreed fee, reducing Noble's agreed fee by three percent, and correspondingly increasing Gibson's fee by three percent for work performed after Noble's discharge.
 
 
 10
 The remaining two Shelley cases and the Buchanan case, which were eventually consolidated, did not settle for some time thereafter. In the meantime, Gibson and Meyer continued preparing the cases for trial. In February, 1989, Burns and Noble filed motions seeking recovery of their attorneys' fees in these three cases. Without holding an evidentiary hearing, on August 10, 1989 the district court ordered that the attorneys' fees in these remaining cases would be distributed as follows: (1) in the Bobby and LaNell Shelley cases, 50 percent of the fees would go to Burns, 25 percent to Noble, and 25 percent to Gibson; and (2) in the Buchanan case, Burns, Gibson, and Meyer would each receive an equal share of the fee.[4] In its order, the district court indicated that it was relying on the parties' contract, but was modifying the contractual percentages only insofar as Burns had offered to accept a three-way split of the Buchanan fee and a ten percent reduction of his Shelley fees. On August 28, 1989, Gibson moved to vacate this order. On August 29, 1989, tentative settlements were reached in these three cases. (These settlements have since been finalized.) On November 1, 1989, the district court denied Gibson's motion to vacate its August 10, 1989 order setting the division of attorneys' fees, and designated the order as final and appealable. This appeal by Gibson followed.
 
 
 11
 Initially, Gibson argued in his brief on appeal that the district court lacked jurisdiction over the attorney fee dispute because the dispute involves the application of Kentucky law to the situations of three non-diverse attorneys. At oral argument Gibson conceded that the district court had ancillary jurisdiction over the dispute. Novinger v. E.I. DuPont De Nemours & Co., Inc., 809 F.2d 212, 217 (3d Cir.), cert. denied, 481 U.S. 1069 (1987). However, he nonetheless still argues that the dispute should be resolved in a Kentucky court because the district court's resolution of the attorney fee motions denied him his constitutional right to jury trial. As we noted in Krause v. Rhodes, 640 F.2d 214, 218 (6th Cir.1981), federal courts have "broad equity power to supervise the collection of attorneys' fees under contingent fee contracts":
 
 
 12
 where an attorney recovers a fund in a suit under a contract with a client providing that he shall be compensated only out of the fund he creates, the court having jurisdiction of the subject matter of the suit has power to fix the attorney's compensation and direct its payment out of the fund.
 
 
 13
 Id. (quoting Garrett v. McRee, 201 F.2d 250, 253 (10th Cir.1953) and Cappel v. Adams, 434 F.2d 1278, 1279 (5th Cir.1970)). Because resolution of the fee dispute was within the district court's equity power, the district court did not err in undertaking to decide the question nor in denying Gibson a jury trial.
 
 
 14
 This court usually sustains a district court's award and division of attorneys' fees absent an abuse of discretion. Dean v. Holiday Inns, Inc., 860 F.2d 670, 672 (6th Cir.1988). The district court's August 10, 1989 order establishing the division of attorneys' fees indicates that the court based its award on the contingency contracts, increasing the percentages awarded to Gibson and carving out an award for Meyer only insofar as Burns offered to take a reduction in his contractual fees, and awarding Noble the full fee which she contracted to receive. However, both Burns and Noble, albeit for different reasons, withdrew from their representation of the plaintiffs prior to the completion of the litigation. Because neither of these attorneys completed their contracts with the plaintiffs, their recovery must be based on quantum meruit. LaBach v. Hampton, 585 S.W.2d 434, 436 (Ky.1979). Under the circumstances, we cannot sustain the fee awards at issue in this case because we conclude that the district court erred as a matter of law in awarding attorneys' fees to Burns and Noble based solely upon their contingency contracts.
 
 
 15
 Kentucky courts have used the term "quantum meruit" to indicate that a discharged attorney "cannot rely upon the contract to collect a full fee but must deduct from the contract the reasonable cost of services of other attorneys required to complete the contract." Id. In setting the Bobby and LaNell Shelley awards, the district court simply shifted ten percent of Burns' contractual fee to Gibson, based solely upon Burns' offer to accept such a reduction, and not based upon a determination of the reasonable cost of Gibson's services required to complete the contract. The records in these two actions do not support a determination that Burns performed work in those cases entitling him to 50 percent of the attorneys' fees. Likewise, in the Buchanan action, the district court simply split the fee three ways among Burns, Gibson, and Meyer, based solely upon Burns' offer to accept a three-way split, and not based upon a determination of the reasonable costs of Gibson's and Meyer's services. The record in the Mary Buchanan action does not support a determination that Burns performed work in that case entitling him to one-third of the attorney fee award. Indeed, in each of these three actions, the docket entries (the only indication which we have of the work performed by the attorneys, given the lack of an evidentiary record) suggest that before his withdrawal, Burns' accomplishments consisted of little, if anything, more than filing the complaints.[5]
 
 
 16
 Noble, who despite her discharge was awarded the entire percentages which she contracted to receive, argues that Gibson's failure to appeal the order setting attorneys' fees in the Anthony Shelley case precludes him from challenging the award of attorneys' fees in the remaining two Shelley cases, which are subject to the same contract. However, Noble fails to note that since the Bobby and LaNell Shelley actions were not settled until long after the Anthony Shelley action, additional adjustments would have to be made to the contractual percentages to reflect work performed by Gibson after Burns and Noble had withdrawn. Thus, Gibson is not collaterally estopped from relitigating the issue of attorneys fees in the Bobby and LaNell Shelley actions.
 
 
 17
 Noble's fee awards in these latter two Shelley actions are likewise unsupported by the record. Although the docket entries reveal that a substantial amount of work was performed in those actions after Noble's discharge, the district court awarded Noble the full 25 percent of the fee which she contracted to receive. The district court therefore deducted nothing at all from Noble's contractual fee to compensate Gibson for his reasonable efforts to see the cases to their conclusion after Noble's discharge. The district court did not find, and the record before us does not support a conclusion that Noble performed services in the Bobby and LaNell Shelley cases equivalent in value to those performed by Gibson.[6]
 
 
 18
 A final word about Noble's participation in the Shelley cases is in order. Burns, who initiated Noble's contact with Teresa Shelley, retained Noble as his defense attorney in his pending federal criminal proceedings. Gibson argues that Burns procured a share of the Shelley fees for Noble as "payment" for her work in his defense. Burns and Noble have denied making such a quid pro quo. However, the district court, which did not hold an evidentiary hearing on the fee issue, made no finding addressing this serious allegation. We therefore decline to address the merits of this claim. On remand, the district court should make a quantum meruit distribution of the attorneys' fees which compensates Noble only for work which the evidence shows she performed on the Shelley cases.
 
 
 19
 In sum, we conclude that the district court erred in its order setting the attorneys' fees in the Bobby and LaNell Shelley and Mary Buchanan actions. On remand, the district court should conduct an evidentiary hearing and develop a record which will enable it to assess the value of the services rendered by each of the attorneys retained in the respective cases, and enter an order dividing the attorneys' fees based on quantum meruit.
 
 
 20
 We VACATE the order setting attorneys' fees, and REMAND this case to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [2]
 Reference to the Anthony Shelley estate shall include only the paternal half of the estate unless otherwise noted. Clurie Pennington, named as co-administratrix of the maternal half of the Anthony Shelley estate, hired different attorneys whose fees are not at issue in this proceeding. Likewise, the heirs of Elsie Shelley hired different attorneys whose fees are not at issue here
 
 
 [3]
 The Anthony Shelley case was finally dismissed with prejudice in April, 1989, after all settlement monies had been paid and a release had been executed
 
 
 [4]
 In its order, the district court erroneously stated that the Buchanan case contingency fee was to be 35 percent of the recovery. This appears to be a mere technical error which must be corrected on remand; the contingency contract in that case calls for a fee totalling 33 percent of the amount recovered
 
 
 [5]
 Burns argues that his fee splitting contract with Gibson specifically states that Burns' original agreed 60 percent share of the fee was in consideration of his work performed before his resignation from the bar and consequent withdrawal from the cases. Apparently, therefore, he believes he should be entitled to at least 50 percent and 33 and one-third percent of the fees in the respective cases as ordered by the district court. However, this contractual provision, which was included in an attempt to avoid ethical questions raised by the division of legal fees with a disbarred lawyer, is hardly controlling. At the time Gibson and Burns signed their contract, the cases were nowhere near completion, and it would have been virtually impossible to predict how much additional work would be required to complete them
 
 
 [6]
 Only six docket entries out of approximately 180 in the Shelley actions were made before Noble moved to withdraw from the cases. While many of the subsequent entries pertain to the attorney fee motions, many also document extensive discovery which occurred after Noble's discharge while Gibson was working on the cases. The first depositions in the cases were not even noticed until after Noble had moved to withdraw