993 F.2d 1547
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gerald MALTMAN, Plaintiff,
Michael E. McGill, Intervenor-Plaintiff-Appellant,
E.J. Leizerman, Attorney-Appellee,
v.
CONSOLIDATED RAIL CORPORATION, Defendant.
 No. 92-3381.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1993.
 
 Before KEITH and BATCHELDER, Circuit Judges, and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Michael E. McGill appeals the jurisdiction of the district court in awarding attorney fees to Attorney E.J. Leizerman and refusing to award McGill attorney fees. We find that the district court had jurisdiction over the matter, and thus we affirm the district court.
 
 I.
 
 2
 This appeal centers on a heated fight between two attorneys over attorney fees. On January 1, 1987, Michael McGill and E.J. Leizerman formed a partnership for the practice of law. McGill and Leizerman at the time agreed that the attorney fees recovered from cases in progress as of January 1, 1987, were to be divided equally.
 
 
 3
 On May 31, 1989, Plaintiff Gerald Maltman hired McGill to represent him in a personal injury case against his employer, Conrail Corp. McGill prepared and filed a complaint on behalf of Maltman under the Federal Employers' Liability Act and the Federal Safety Appliance Act. The parties consented to having the case be heard by Magistrate Judge James Carr.
 
 
 4
 In September of 1990, McGill and Leizerman terminated their partnership. McGill alleges that he and Leizerman agreed to continue to divide all fees recovered from cases in progress as of September 10, 1990, including the Maltman case.
 
 
 5
 On November 29, 1990, Elizabeth J. Leizerman, wife of E.J. Leizerman, filed a complaint in partition against E.J. Leizerman and McGill in state court, seeking to divide the parties' interest in the Leizerman and McGill law practice. E.J. Leizerman and McGill asserted cross-claims against each other concerning division of property, including attorney fees.
 
 
 6
 Maltman then fired McGill as his attorney on May 30, 1991. On June 5, 1991, McGill filed a motion to withdraw as counsel of record for Maltman, which was granted on June 10, 1991. On June 20, 1991, Leizerman entered his appearance and undertook Maltman's representation. On June 25, 1991, McGill filed a motion to intervene in order to receive his share of the attorney fees from the Maltman case. The district court granted the motion to intervene on October 3, 1991.
 
 
 7
 Maltman then settled his claim with Conrail Corp. To facilitate the settlement, McGill agreed to the dismissal of his complaint in intervention and a disbursement of the settlement proceeds to Maltman, less attorney fees, on the condition that Leizerman post a bond for the attorney fees paid to him. On October 10, 1991, the magistrate entered an order finding that McGill's claim in intervention would be dismissed with consent and prejudice. However, the magistrate stated in its order that it declined to accept jurisdiction over the attorney fee issue and deferred the matter to the pending state court action filed by Elizabeth Leizerman for resolution of the fees matter. The magistrate ordered that the settlement proceeds allocated to attorney fees be turned over to Leizerman, but ordered Leizerman to post a bond of 25% of the settlement.
 
 
 8
 On November 5, 1991, McGill advised the court that Leizerman had not posted the bond yet and that he intended to file a Rule 11 motion for sanctions against Leizerman. On November 8, 1991, Leizerman responded that he had been unsuccessful in obtaining a bond and requested that he be permitted to deposit the attorney fees portion of the settlement with the Clerk of Courts. On December 20, 1991, the district court issued an order instructing Leizerman to deposit the funds with the Clerk. In that order, the magistrate again stated that he was leaving the matter to the state court, and that once that matter was decided, the Clerk must turn over the money to the prevailing party in state court. Leizerman deposited $87,500 with the Clerk on December 23, 1991.
 
 
 9
 On February 14, 1992, Leizerman filed a "Motion to Determine Claim for Attorney Fees". On February 27, 1992, McGill filed a motion to consolidate the attorney fees issue with the state court proceeding. On March 19, 1992, minutes prior to the scheduled evidentiary hearing on the attorney fee issue, McGill filed a motion to dismiss, arguing that the magistrate lacked jurisdiction to entertain the attorney fee issue because of the magistrate's earlier rulings that he would decline jurisdiction. The magistrate denied the motion to dismiss, denied the motion to consolidate, and conducted the evidentiary hearing. McGill refused to participate because he claimed that the magistrate lacked jurisdiction. After the hearing, the magistrate found that McGill was entitled to recover fees based on the reasonable value of the services rendered to Maltman, but held that McGill's representation of Maltman was de minimis. He awarded Leizerman the full amount of the attorney fees. On March 23, 1992, the magistrate issued an order memorializing this disposition. He also formally denied the motion to dismiss and the motion to consolidate. A judgment entry was filed on March 26, 1992. McGill now appeals the order on jurisdictional grounds only.
 
 II.
 
 10
 We affirm the magistrate judge's disposition of the attorney fees because we find that he had jurisdiction over the attorney fee dispute and did not abuse his discretion in reasserting jurisdiction over the matter after initially declining jurisdiction.
 
 
 11
 In a suit in which the district court has federal question or diversity jurisdiction, the district court also has ancillary jurisdiction[1] over attorney fee disputes among non-diverse attorneys. Shelley v. Texas Eastern Transmission Inc., 933 F.2d 1009, at p. 3 (6th Cir.1991) (unpublished per curiam) (district court has ancillary jurisdiction over attorney fee dispute). In Dean v. Holiday Inns, Inc., 860 F.2d 670 (6th Cir.1988), a panel of this Court addressed an attorney fee dispute between an attorney, Bandy, and his former associate, Scapelliti, who was retained by the clients after Scapelliti was fired from Bandy's firm. Id. at 670-71. After Bandy was not retained by the clients, Bandy filed a motion to intervene in the suit in which Scapelliti was attorney of record. A panel of this Court, in addressing Bandy's argument that his intervention destroyed diversity jurisdiction, stated:
 
 
 12
 Because it is clear that there was diversity between the original parties, jurisdiction of citizenship in the district court was proper, and jurisdiction remained proper after and despite Bandy's intervention to seek resolution of the attorneys' fee dispute.
 
 
 13
 Id. at 672. See also Cassino v. Reichhold Chemical Inc., 983 F.2d 1075 (9th Cir.1993) (unpublished per curiam) (district court had ancillary jurisdiction to divide attorney fees at time of entry of final judgment, not two years later); Sederquist v. Court, 861 F.2d 554, 557-58 (9th Cir.1988) (ancillary jurisdiction over fee dispute in original case but no ancillary jurisdiction over new case filed by attorneys to dispute); Novinger v. E.I. DuPont de Nemours & Co., 809 F.2d 212 (3d Cir.) (ancillary jurisdiction "necessarily includes the power to resolve disputes with respect to the payment of attorneys' fees and expenses"; district court can resolve these disputes after the underlying case has been resolved.), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462 (1987).
 
 
 14
 In this case, the magistrate judge clearly had ancillary jurisdiction over the attorney fee dispute between Leizerman and McGill. It is irrelevant that the magistrate dismissed McGill's intervention with prejudice at the time of the settlement and that there was no intervenor at the time of the magistrate's final ruling on fees. Even without an intervention, the magistrate had ancillary jurisdiction to decide the dispute. Cf. Dean, 860 F.2d at 672 (jurisdiction proper despite intervention).[2]
 
 
 15
 The only question then is whether the magistrate lost this ancillary jurisdiction by declining jurisdiction in his October and December 1991 orders. In his October 10, 1991, order addressing the settlement, the magistrate judge stated:
 
 
 16
 Mr. McGill agreed to dismiss his intervening proceeding in this case with prejudice. At that point, there was no longer an issue pending before me relative to the apportionment of the fees in this case. In any event, in view of the pendency of the Lucas County action, it appeared appropriate to decline to accept jurisdiction over the fees dispute in this case, and thereby permit this aspect of that more general dispute to be resolved in that litigation.
 
 
 17
 Nonetheless, the magistrate judge ordered Leizerman to post a bond for 25 percent of the settlement amount and later addressed McGill's letter by ordering Leizerman to deposit the money with the Clerk of Courts instead. In ordering Leizerman to deposit the money, the magistrate also stated that "once the Lucas County Court of Common Pleas resolves all matters in dispute between the lawyers in this matter, the Clerk can and shall be directed to make disbursement of those funds in accordance with such resolution." After the state proceeding did not go to trial as planned and after Leizerman filed a motion to resolve the attorney fee dispute, the magistrate judge explicitly took jurisdiction over the entire matter and held an evidentiary hearing on it. In response to McGill's argument that the court lacked jurisdiction to hear the dispute once he--the intervenor--had been dismissed, the magistrate stated that "my recollection is this was basically sort of a, in essence a hold this in abeyance, let's see what happens across the street [in state court]." The magistrate concluded that he needed to end the litigation and proceed to a hearing. Although McGill left the hearing and chose not to participate, the magistrate judge took testimony on the fees dispute and awarded Leizerman the full amount.
 
 
 18
 Although the magistrate judge did initially indicate that he declined to accept jurisdiction over the issue, the magistrate in fact took jurisdiction over the matter and over the res--the attorney fee funds--by ordering bond to be posted and by ordering that the funds be deposited with the court. He merely stayed his decision pending the outcome of the state proceeding and in essence abstained. Because he was merely staying his hand, the magistrate did not lose jurisdiction over the matter by waiting to see what would happen in state court. Thus, we find that the magistrate did not lose his jurisdiction to hear the issue by initially declining to accept jurisdiction. In addition, we reject McGill's argument that the magistrate abused his discretion in accepting jurisdiction after initially declining it. The magistrate was perfectly justified in deciding to hear the issue after learning that the state court proceeding was stalled and after the parties filed numerous letters and motions urging him to take action on this matter.[3]
 
 III.
 
 19
 Since McGill only questions the magistrate's jurisdiction and not his decision on the merits to award Leizerman the attorney fees, we need not address the merits of the attorney fee dispute. Accordingly, we AFFIRM the magistrate judge's attorney fee award since he had jurisdiction over the matter.
 
 
 
 *
 The Honorable James P. Churchill, U.S. District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Ancillary jurisdiction is jurisdiction over certain cross-claims, counter-claims and third-party claims that are related to the principal case but do not enjoy a separate basis for subject matter jurisdiction. Sandlin v. Corporate Interiors Inc., 972 F.2d 1212, 1216 (10th Cir.1992). The concept extends to claims by a defending party haled into court against his will or by a party whose rights might be irretrievably lost unless he could assert them in an ongoing action in federal court. W.R. Grace & Co. v. Continental Cas. Co., 896 F.2d 865, 871 (5th Cir.1990)
 Ancillary jurisdiction and pendent jurisdiction have been codified and altered in the Judicial Improvements Act of 1990, 28 U.S.C. § 1367. Actions such as this one commenced prior to the effective date of the Act--December 1, 1990--are governed by the ancillary jurisdiction doctrine created by case law.
 
 
 [2]
 Because this action commenced before the effective date of the Judicial Improvements Act of 1990, which revised the judicial doctrine of ancillary jurisdiction, we need not address what effect this Act may have had on the district court's jurisdiction over this matter
 
 
 [3]
 McGill's argument that the district court lost personal jurisdiction over him once his complaint in intervention was dismissed is without merit. The court retained personal jurisdiction over McGill throughout, with or without the intervention